UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Gail Lynn Simpson, individually,
and on behalf of all others similarly
situated,

                Plaintiff,

vs.

The County of Meeker, Minnesota,
and Sheriff Mike Hirman,

                Defendants.

Civil No. 08-CV-00897

---

**JOINT PETITION OF PLAINTIFF AND DEFENDANTS FOR
CERTIFICATION OF SETTLEMENT CLASSES AND PRELIMINARY
APPROVAL OF THE PROPOSED SETTLEMENT AGREEMENT**

---

Gail Lynn Simpson, for herself and on behalf of all others similarly situated, acting by and through her undersigned counsel, Vincent J. Moccio of Robins, Kaplan, Miller & Ciresi L.L.P. ("Plaintiff's Counsel"), and Defendant Meeker County, Minnesota, and Sheriff Mike Hirman, jointly petition the Court for Preliminary Approval of the Proposed Settlement Agreement between the Classes and Defendants. The proposed Settlement Agreement is attached hereto as Exhibit A[1] and will be executed if this Court gives final approval to this settlement.

## I.    INTRODUCTION.

The proposed Settlement Agreement would resolve Defendants' liability to the Settlement Classes, the Strip Search Settlement Class and the Photograph Settlement Class. The Strip Search Settlement Class Members shall be defined as:

---

[1] All exhibits are attached to the Declaration of Vincent Moccio in Support of this Joint Petition.

> All persons arrested for gross misdemeanors, misdemeanors, or lesser offenses, unrelated to weapons or illegal drugs, who at the time of their booking into the Meeker County Jail, were required by officers of Meeker County to remove their clothing for visual inspection of their genitals, pubic area, buttocks, or, in the case of females, breasts, in the absence of any individualized suspicion that they possessed contraband or weaponry, at anytime between March 31, 2002, and April 30, 2008.

The Photograph Settlement Class shall be defined as:

> All persons arrested for gross misdemeanors, misdemeanors or lesser offenses, unrelated to weapons or illegal drugs, who at the time of their booking into the Meeker County Jail, had their pubic area, or, in the case of females, breasts, photographed by officers of the Meeker County Jail, at anytime between March 31, 2002, and April 30, 2008.

As more fully described below, the parties request the Court certify the proposed Settlement Classes at this time, appoint Gail Lynn Simpson ("Named Plaintiff") as Class Representative for both Classes, appoint Plaintiff's Counsel, Vincent J. Moccio, Robins, Kaplan, Miller & Ciresi L.L.P., as Class Counsel, and grant preliminary approval of the proposed settlement.   The parties also ask the Court to approve the forms of notice to be sent to prospective members of the Settlement Classes, to schedule a final fairness hearing and to order that all potential class members be notified of the proposed settlement and provided with an opportunity to comment on, object to, or opt out of the proposed settlement.

This Petition will discuss the applicable substantive law, the standards and procedure for preliminary approval, the authority for certification of the settlement classes, the reasons why the proposed Settlement Class fulfills the certification requirements of Federal Rule of Civil Procedure 23, and the reasons why the approval of the Settlement Agreement is a preferable alternative to the inherent expense, delay and uncertainty of continued litigation and trial.

## II.      FACTUAL AND PROCEDURAL BACKGROUND.

The Named Plaintiff brought this cause of action as a putative class action against the Defendants, alleging that she was illegally strip searched and that her breasts were photographed at the Meeker County Jail and seeking damages under 42 U.S.C. § 1983 for violation of her rights secured by the Fourth and Fourteenth Amendments of the Constitution of the United States ("the Subject Lawsuit").  The Named Plaintiff's Class Action Complaint, alleging that she was illegally strip searched and photographed at the Meeker County Jail, was served upon Defendants on March 31, 2008.

The Named Plaintiff, individually, and on behalf of the Classes, and the Defendants desire to settle the Subject Lawsuit to avoid the uncertainties and risks of trial, to avoid further expenses, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the covenants, releases, orders and judgments contemplated by this Settlement Agreement so as to settle and put to rest totally and finally the matters raised by the Subject Lawsuit.

Plaintiff's Counsel has conducted substantial investigations and negotiations and, considering the benefits of the settlement and the risks of litigation, has concluded that it is in the best interest of the Named Plaintiff and the Classes to enter into the Settlement Agreement.  The Named Plaintiff and Plaintiff's Counsel agree that this settlement is fair, reasonable and adequate with respect to the interests of the Named Plaintiff and the Classes, and should be approved by this Court pursuant to Federal Rule of Civil Procedure 23(e).

## III.     BRIEF OVERVIEW OF THE CONSTITUTIONALITY OF STRIP SEARCHES OF PRETRIAL DETAINEES AND THE PARAMETERS OF THE CLASSES HEREIN.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches. *Goff v. Nix*, 803 F.2d 358, 363 (8th Cir. 1986). In assessing the reasonableness of a

strip search, the United States Supreme Court calls for a "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*.

Although not without exceptions, the general rule that has evolved from the case law is that blanket policies of strip searching pretrial detainees arrested for "minor offenses" are unconstitutional, while those arrested for felonies may be strip searched. This is because strip searches of persons arrested for "minor offenses" are subject to a reasonable suspicion standard, requiring "individualized suspicion specifically directed to the person who is targeted for the strip search." *McDonell v. Hunter*, 809 F.2d 1302, 1307 (8th Cir. 1987). The decisions holding that the nature of the criminal charge itself supports a strip search are based on the view that the charge itself supplies the needed reasonable suspicion. *See Weber v. Dell*, 804 F.2d 796, 800-01 (2nd Cir. 1986). Thus, an arrest for a felony provides the needed suspicion in and of itself, while an arrest for a lesser offense requires a more specific suspicion.

Traffic violations are almost universally considered "minor offenses" precluding a strip search in the absence of individualized reasonable suspicion that the detainee is concealing contraband. *Master v. Crouch*, 872 F.2d 1248, 1255 (6th Cir. 1989). Misdemeanors are also generally considered "minor offenses" subject to the reasonable suspicion standard, and "gross misdemeanors" may also be considered such "minor offenses." *See John Does 1-100 v. Boyd,* 613 F. Supp. 1514, 1518-19 (D. Minn. 1985) (gross misdemeanor DUI arrestees are part of a class "arrested and held on minor offenses"). However, even where the offense is a "minor

offense," the detainee can be constitutionally strip searched if the offense involved drugs or weapons. *John Does 1-100 v. Ninneman*, 612 F. Supp. 1069, 1070 (D. Minn. 1985).

In sum, courts have found that the Fourth Amendment balance should be struck in favor of the privacy interests of the detainees where the offenses are minor and do not involve drugs or weapons. As the Court in *John Does 1-100 v. Boyd* stated:

> While the need to ensure jail security is a legitimate interest, the strip searches of lesser offenders as a matter of policy bears such an insubstantial relationship to security needs that, when balanced against the severe intrusion on plaintiffs' privacy rights, the searches are not 'reasonable.' The particular plaintiffs in the instant case were lesser offenders who gave no indication of posing a risk to themselves or to others within the jail. The defendants had no objective reason to believe that any of the plaintiffs were carrying contraband. Under these circumstances, a complete strip search was not justified.

613 F. Supp. at 1524.

Thus, in this case, the parties have agreed to a class settlement that includes in the class all persons arrested for gross misdemeanor, misdemeanor, and lesser offenses that did not involve drugs or weapons who were either strip searched and/or whose pubic area or breasts, if female, were photographed. The beginning date of the class period is March 31, 2002, since Plaintiff's Complaint was served on March 31, 2008, and this action is controlled by a six-year statute of limitations. *See, e.g., Sternjohn v. Kreisler*, 238 F.Supp.2d 1104, 112 (D. Minn. 2003). The ending date of the class period is April 30, 2008, as negotiated by the parties, based on a change in Meeker County's strip search policy**.**

The parties note that, in addition to monetary damages, Plaintiff's Complaint sought relief in the form of a preliminary and permanent injunction ordering defendants to refrain from continued strip searching and photographing the pubic area and/or breasts of persons meeting the class definitions. On or about April 30, 2008, Meeker County changed its policy so that it no

longer strip searches and/or photographs the pubic area and/or breasts of people meeting the class definitions.

## IV.    SETTLEMENT APPROVAL PROCEDURE.

No action brought as a class action may be settled, compromised or dismissed without court approval.  Fed. R. Civ. P. 23(e).  Judicial experience with Federal Rule of Civil Procedure 23, has led to an exacting procedure and specific criteria for class action settlement approval. This experience is embodied in the procedure and criteria suggested in the Manual for Complex Litigation 4th (2004) § 21.63 ("MFCL"), and is comprised of two distinct steps:

1.    Preliminary approval of the proposed settlement at an informal hearing; and

2.    Dissemination of notice to all affected class members of a formal "fairness hearing" at which class members may be heard regarding the settlement and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement is presented.

This procedure is commonly utilized by the federal district courts.  *See e.g., Sanders v. Ashland, Inc.,* No. 4-96-721, 2000 U.S. Dist. LEXIS 14623, at *3 (D. Minn. Apr. 10, 2000) (describing process of preliminary approval followed by notice to class members) (unpublished opinion attached as Exhibit B).   It is the method endorsed by the oft-quoted leading class actions treatise, Newberg on Class Actions ("Newberg").   2 Newberg,  § 11.22, et seq.  By adopting this procedure, the Court will assure Class Members of the protection of procedural due process and fulfill the Court's role as guardian of class interests.

This Petition requests that the Court:

1.    Certify "conditional" settlement classes, i.e., certify the classes for the purposes of settlement <u>only</u>, and appoint Named Plaintiff Gail Lynn Simpson, as Class Representative for both Classes.   If the proposed settlement, for whatever reason, fails to become effective, the classes will no longer be considered certified and this action will revert back to being a putative

class action. However, nothing shall prevent the classes from being certified at a later date either as settlement classes or classes outside the settlement context.

2.      Appoint Plaintiff's Counsel as Class Counsel;

3.      Grant preliminary approval to the Settlement Agreement;

4.      Approve the proposed forms of Notice of the proposed settlement to be mailed;

5.      Adopt the proposed deadlines set forth below, or other similar deadlines; and

6.      Schedule the Formal Fairness Hearing for a date and time certain so that that date and time can be included in the Notice.

*See* 2 Newberg, § 11.26.

## V.      THE PROPOSED SETTLEMENT FULFILLS THE PRELIMINARY APPROVAL CRITERIA.

It has been repeatedly recognized that settlements are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits. *See e.g., First Wisconsin Nat'l Bank v. Klapmeier,* 526 F.2d 77, 81 (8th Cir., 1975) ("[t]he policy of the law has always been to promote and sustain the compromise and settlement of claims."). This rule has particular force in a class action. *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1405 (D. Minn. 1987) (describing policy favoring settlements in Title VII class actions). Thus, in considering a proposed class settlement, courts generally view facts in a light favorable to settlement. *Spencer v. Comserv Corp.*, Nos. 4-84-794, 4-84-882 and 4-85-283, 1986 U.S. Dist. LEXIS 15863, at *16 (D. Minn. Dec. 30, 1986) (unpublished opinion attached as Exhibit C).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court usually on the basis of written submissions and informal presentation from the settling parties. MFCL, § 21.632. During the preliminary evaluation, a

court should determine whether the proposed settlement is reasonable and within the range of possible approval.  *First Nat'l Bank v. Am. Lenders Facilities*, Inc., No. 00-269, 2002 WL 1835646, at *1 (D. Minn. July 16, 2002) (unpublished opinion attached as Exhibit D).  The court may raise questions at the preliminary hearing and seek independent review "if there are reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys."  MFCL, § 21.632.  After the court is satisfied as to the class certifiability and the initial inquiry into the settlement's fairness, reasonableness and adequacy, the court should direct that Rule 23(e) notice of formal fairness hearing be given to class members.  *Id.* at § 21.633.

Here, the proposed Settlement Agreement is worthy of preliminary approval.  It is the product of extensive settlement discussions and negotiations between counsel.  Its approval will spare the parties the expense, delay and uncertainty inherent in a trial and subsequent appeal.  *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971); 2 Newberg, § 11.40-11.47, 11.50.  It is a fair settlement of the Class Member's uncertain claims.

## VI.   TEMPORARY CERTIFICATION OF THE PLAINTIFF CLASSES FOR SETTLEMENT PURPOSES.

The preliminary hearing is also utilized to consider the certification of a settlement class, where as here, the proposed classes have not previously been certified by the court.  *See In re Baldwin-United Corp.*, 105 F.R.D. 475, 478 (S.D.N.Y. 1984); 2 Newberg, § 11.22.  It has become accepted practice to seek certification of a temporary Settlement Class for settlement purposes in connection with settlements reached before the formal certification ruling has been made. 2 Newberg, § 11.22.  Certification of a settlement class assures the settling defendant that the release given will bind all interested parties, not just the named plaintiff, and enables a

settling defendant to withdraw from the litigation with a binding and universal release. 2 Newberg, § 11.23.

Fed. R. Civ. P. 23 enumerates four prerequisites for certification of a class: numerosity, commonality, typicality and adequacy.  Fed. R. Civ. P. 23(a)-(d).  The standards employed to measure these requirements are lessened in the settlement context as it is entirely proper to certify, as a Settlement Class, a group that might have difficulty obtaining certification in a non-settlement context. 2 Newberg, § 11.27.  The proposed Settlement Classes here, however, meets all the requirements of Rule 23 even without the lessened Settlement Class considerations and are certainly worthy of certification.

### A.      Rule 23(a)(1):  Numerosity.

The requirement of Fed. R. Civ. P. 23(a)(1) is that "the class is so numerous that joinder of all members is impracticable."  The information provided by Meeker County shows that during the class period over 2,600 people were booked over 4,000 times for misdemeanors and gross misdemeanors not involving drugs or weapons (some individuals were booked more than once).  Almost every one of the over 4,000 booking records that Meeker County provided has at least one photo attached to it.  Such numbers easily satisfy the numerosity requirement.  In determining numerosity, "the rule of thumb is that the existence of 40-plus class members raises a presumption that joinder is impracticable, and a class that size should meet the test of Rule 23(a)(1) on that fact alone."  *Baer v. G&T Trucking Co.,* No. 03-3460, 2005 U.S. Dist. LEXIS 3656, at *12 n.2 (D. Minn. March 1, 2005) (unpublished opinion attached as Exhibit E).  There is no question that the number of class members in this case greatly exceeds the threshold for a presumption of impracticability of joinder and satisfies numerosity.[2]

---

[2]      *See* 1 Newberg, § 3.05 at 3.25 ("Certainly, when the class is very large—for example,

### B.      Rule 23(a)(2):  Commonality.

Fed. R. Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the class."   Commonality is satisfied when a common issue that advances the litigation of all class members pervades the class members' claims.  *Id.* at *8.  Commonality does not mean that all relevant questions of fact or law are identical for all class members.  *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 551 (8th Cir. 1982).  On the contrary, a single common issue can be sufficient to satisfy the commonality requirement.  *Baer,* 2005 U.S. Dist. LEXIS 3656, at *8  (Exhibit E).

Courts determine that the commonality requirement is satisfied when the defendants engage in standardized conduct toward class members.  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *cert. denied,* 537 U.S. 812 (2002) ("[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."); *Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265, 269 (D. Minn. 2002) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents."))**;** *Borcherding-Dittloff v. Transworld Sys., Inc.*, 185 F.R.D. 558, 563 (W.D. Wis. 1999).  Some factual variation among class members' individual claims does not defeat a class action.  *Egge*, 208 F.R.D. at 268.

The commonality test is satisfied here.  Named Plaintiff alleges an indiscriminate and unconstitutional practice of strip searching arrestees and photographing pubic areas or breasts of arrestees with body piercings during the proposed class period, regardless of any individualized

---

numbering in the hundreds—joinder will be impracticable, but in most cases, the number that will, in itself, satisfy the [Federal] Rule 23(a)(1) prerequisite should be much lower.  In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

suspicion. *See* Complaint, ¶¶ 10–13, 24–28, 30-32. These practices amount to standardized conduct that affected the class members in like fashion. As in *Blihovde v. St. Croix County*, 219 F.R.D. 607, 616 (D. Wis. 2003), an analogous Wisconsin strip search class action, "[t]he most salient common issue alleged by plaintiffs is that each class member was strip searched in accordance with an unconstitutional policy." The same is true here.

While this single salient issue is sufficient for class certification, here there are a variety of factual and legal issues common to the class, including: (1) whether defendants engaged in such standard practices during the class period; (2) whether the practices were unconstitutional; (3) whether the county can therefore be held liable for a "custom, or usage" under 42 U.S.C. § 1983; and (4) whether federal constitutional law was sufficiently clear as of the class period so that individual officer defendants are deprived of a qualified-immunity defense. All class members share an interest in the efficient and expeditious resolution of these issues. There is no conflict of interest over how these issues should be resolved. And the resolution of any one of them will materially advance the litigation.

The better-reasoned strip search cases involving standard practices rightly focus on the plaintiff's factual and legal theories. For example, the Southern District of Indiana concluded:

> Rule 23(a) permits a class action in a Fourth Amendment setting. While it is true that the factual setting of each putative class member's claim will vary, each plaintiff alleges a common legal theory — to wit, the unconstitutionality of Defendants' policy of strip searching arrestees for minor offenses without reasonable suspicion to suspect they were concealing contraband or weapons. The constitutionality of this policy is "at the heart of" this case, . . . leading us to conclude that Rule 23(a)(2)'s commonality requirement has been satisfied.

*Doan v. Watson*, No. 99-4-C-B/S, 2000 U.S. Dist. LEXIS 8595, at *19 (D. Ind. March 4, 2000) (citations omitted) (unpublished opinion attached as Exhibit F); *see Mack v. Suffolk County*, 191 F.R.D. 16, 24 (D. Mass. 2000).

The Sixth Circuit reached the same result in *Eddleman v. Jefferson County*, No. 95-5394, 1996 U.S. App. LEXIS 25298, at *11–13 (6th Cir. Aug. 29, 1996) (unpublished opinion attached as Exhibit G).   Commonality was established even though some of the class members might have been completely disrobed while others were not, even though the location of the strip searches within the jail might have varied, and even though some individuals might be excluded from the class because it could be proved that officials had reasonable suspicion to search them:

> Plaintiff's legal theory is that all members of the class were subject to unconstitutional searches after being arrested for minor offenses pursuant to a blanket policy or custom.   Their theory is that both full and partial searches are unconstitutional without reasonable suspicion that the person is carrying a weapon or contraband. Common legal theories therefore bind the class even if some sets of facts are more severe than others.

*Id.* at *12.   That reasoning applies with equal force here.

### C.     Rule 23(a)(3):  Typicality.

Fed. R Civ. P. 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."   "A plaintiff's claim is typical if it arises from the same event or *practice or course of conduct* that gives rise to the claims of other class members and his or her claims are based on the same legal theory . . . *even if there are factual distinctions* between the claims of the named plaintiffs and those of other class members."   *De La Fuente v. Stokely-Van Camp. Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (emphasis added; internal quotation and citation omitted); *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996).   Typicality under Rule 23(a)(3) should be determined with reference to the plaintiff's claims, not with respect to particularized defenses a defendant might have against certain class members.   *In re Select Comfort Corp. Sec. Litig.,* 202 F.R.D. 598, 608 (D. Minn. 2001) ("the existence of potential defenses unique to a named plaintiff does not automatically

preclude a finding of typicality.") (citation omitted); *see also Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

For many reasons already explored, the claims of the proposed class representative are sufficiently typical. Like every class member, Ms. Simpson raises the same basic legal theories under the Fourth Amendment. *See De La Fuente*, 713 F.3d at 232 ("[S]imilarity of legal theory may control even in the face of differences of fact."). Moreover, she alleges that she was subject to the same invalid strip search and photographing practices. "This is easily characterized as a 'single practice or course of conduct.'" *Doan*, 2000 U.S. Dist. LEXIS 8595, at *19 (quoting *De La Fuente*, 713 F.2d at 232) (Exhibit F); *accord Eddleman*, 1996 U.S. App. LEXIS 25298, at *13–14 (Exhibit G). The plaintiff and the classes she seeks to represent all possess the same interests and have suffered essentially the same injury. The requirements of Fed. R. Civ. P. 23(a)(3) are met.

### D. Rule 23(a)(4): Adequacy of Representation.

The last requirement of Rule 23(a) is that the representative party "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two factors are relevant when evaluating the adequacy of class representation: (1) whether the representative plaintiff's counsel is qualified; and (2) whether the representative plaintiff has common interests with the classes. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

As for the first factor, Plaintiff's Counsel has handled numerous complex mass tort and class action lawsuits and has specifically represented plaintiffs in class action strip search litigation, where counsel has been found to be qualified to handle class action litigation. *Blihovde*, 219 F.R.D. at 619. As for the second factor, the interests of the proposed Class Representative are not at all antagonistic to the classes. All class members suffered similar harm

from the same procedure(s) at the jail during the class period.  Likewise, the constitutional injuries suffered by the proposed Class Representative give her a sufficient interest in the case to assure vigorous advocacy of the class claims.  The requirements of Rule 23(a)(4) are met.

### E.      Rule 23(b)(3):  Predominance and Superiority.

In order to qualify for class certification, the class action, in addition to meeting the prerequisites of Fed. R. Civ. P. 23(a)-(d), must also be maintainable under either Fed. R. Civ. P. 23(b)(1), (2) or (3).  Here, the class action is maintainable under Fed. R. Civ. P. 23(b)(3) and should be certified.  Rule 23(b)(3) provides that a class action may be maintained if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### 1.      Common Questions Predominate.

The determination of whether common questions predominate does not consist of a mechanical counting of the issues to see whether common or individual questions are more numerous.  *Blihovde*, 219 F.R.D. at 620.  Rather, "the proper standard under Rule 23(b)(3) is a pragmatic one."  *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778, at 528 (2d ed. 1986)).  "The basic question is 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Here, the common questions of law and fact binding the classes together predominate over issues relevant only to individual members.  As argued above, several issues of central importance are shared by the class members, most notably, the existence and unconstitutionality of defendants' strip search and photography practices.  As in *Eddleman*, 1996 U.S. App. LEXIS

25298, at *16–17 (Exhibit G), the foundation for plaintiff's arguments for class certification "arise[] precisely because the defendants did not conduct an individualized assessment of the need for each search. . . . . Due to the single legal theory and the similar facts for each plaintiff, a class action would be superior to individual actions."   The common questions are far more significant than any individualized inquiries that can be practically foreseen.

##### 2.     A Class Action Is the Superior Method of Adjudication.

Moreover, a class action is the best and most sensible manner in which to resolve this controversy.  *See generally, Doan*, 2000 U.S. Dist. LEXIS 8595, at *29–30 (reviewing cases and finding superiority) (Exhibit F).  First, class status can avoid duplicative lawsuits which waste the time and resources of the judiciary and the litigants.  *Markham v. White*, 171 F.R.D. 217, 224 (D. Ill. 1997).   Expeditiously resolving the common issues is in the best interests of the system and the parties.

In addition, while the injuries to the classes as a whole are extensive, the likely per-individual recovery is comparatively low.  A class action thereby provides a forum for class members who would otherwise go without litigating at all, even though their claims are meritorious.  *See e.g., In re Select Comfort Corp. Sec. Litig.,* 202 F.R.D. 598, 611 (D. Minn., 2001)*; Vernon J. Rockler & Co. v. Graphic Enter., Inc.,* 52 F.R.D. 335, 347 (D. Minn. 1971) ("[a] class action must be deemed the only practical method of litigating . . . when the complex nature of the litigation and the comparatively small individual financial interests are considered."); *Mack*, 191 F.R.D. at 25.  The transaction costs of suit-by-suit litigation is not only an avoidable burden on the courts, it is also a critical deterrent to individuals pressing their constitutional claims and holding wrongdoers liable for their constitutional transgressions.

The efficiencies of a class action are apparent in light of the common issues. Repetitious litigation about the law and facts makes little sense here. *See Markham*, 171 F.R.D. at 224. The better course is to take advantage of a more unified and centrally managed method of adjudication. Duplicative arguments and potentially inconsistent results can be avoided.

### 3.    Other Factors.

Additional factors for consideration in determining "predominance" and "superiority" are set forth in Rule 23(b).

The first additional factor is the "interest of members of the class in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Given the relatively small amount of each claim, it is doubtful that any plaintiff would express a desire individually to control the prosecution of his action. However, should there be such a desire, any plaintiff who wishes not to be bound by the class proceedings may simply opt out.

The second factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). To the parties' knowledge, there is no other pending litigation regarding the Meeker County's strip search policy.

Third is the "desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). Since the action stems from illegal strip searches and photographing occurring in Meeker County, Minnesota, Federal District Court in Minnesota is a convenient and logical forum.

Finally, the Court is to consider "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Since the parties have already negotiated settlement, the class members are local and the distribution of notice and of the class'

compensation will be handled by Class Counsel, there should be no management difficulties whatsoever.

## VII.    NATURE AND METHODS OF CLASS NOTICE.

### A.    Methods of Class Notice.

Defendants have provided to Class Counsel the names, addresses, booking dates, photographs and charges of all persons booked into the Meeker County Jail between March 31, 2002, and April 30, 2008.  Defendants do not know whether these persons were strip searched at the time of their booking.  Using this information and the definition certified by the Court, Class Counsel will determine which persons may qualify as Settlement Class Members, i.e., those who were booked for non-felonies not involving drugs or weapons.  Since the defendants are unsure which detainees may have been strip searched and cannot identify which detainees had photographs of their pubic areas or breasts taken without looking through thousands of photographs, those detainees, who otherwise qualify, will be required to attest to the fact that they were strip searched and/or photographed as defined by the class definitions in order to remain in one or both of the Classes. (Attached as Exhibit H, pages 10-11).

Members of the potential Settlement Classes will be notified of the conditional certification of the classes and the proposed settlement by direct mailing.  Class Counsel will retain an outside service to check the validity of all addresses provided by the County.  Direct mailing of the Individually Mailed Notice (attached as Exhibit H) will be made to all addresses found in the booking information provided to Class Counsel by Defendants that cannot be ruled out as a possible residence of a class member by the outside service.[3]  If returned as

---

[3]     For each individual class member, the mailing will be made to all addresses found in the booking information provided to Class Counsel that cannot be ruled out as a possible residence by the outside service.  These addresses will be found in the booking information for the class

undeliverable, and a forwarding or other good address is indicated on the returned envelope, the Notice will be re-mailed to the address indicated on the envelope.  If returned with no forwarding or new address information, Class Counsel will use the outside service to attempt to locate the individual.  Persons who cannot be located in this manner will be considered unlocateable unless they contact Class Counsel as a result of word or mouth or press coverage of the settlement.

> **B.     Legal Requirements of the Notice**.

The proposed form of class notice to be disseminated via first class mail will serve as notice of both the conditional certification of the classes and of the proposed settlement.  Such a dual notice is economic; it reduces expenses and avoids the confusion that separate notification of certification and settlement can produce.  *See* MFCL, § 21.633; s*ee also, In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1103-06 (5th Cir. 1977).  In class action lawsuits, notice by mail to a class member's last known address satisfies the due process requirement.  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77 (1974)).

The proposed Individually Mailed Notice includes the items mandated by Fed. R. Civ. P. 23(c)(2).  It describes the nature of the action, Fed. R. Civ. P. 23(c)(2)(B)(i), the definition of the classes certified, Fed. R. Civ. P. 23(c)(2)(B)(ii), and the class' claims, issues and defenses, Fed. R. Civ. P. 23(c)(2)(B)(iii).  It also informs Settlement Class Members that they may enter an appearance through an attorney if they so desire, Fed. R. Civ. P. 23(c)(2)(B)(iv), or exclude themselves from the Settlement Classes, i.e., "opt out," Fed. R. Civ. P. 23(c)(2)(B)(v).  It

---

period.  In other words, if a potential class member has more than one address listed in the provided booking information, a mailing will be sent to each address.  However, if that same individual was booked after the class period, that address will not be used since it will not be known to the plaintiff's counsel because information from booking sheets for dates after the end of the class period will not be produced by defendants.

describes the time and manner for requesting exclusion.  Fed. R. Civ. P. 23(c)(2)(B)(vi).  It also informs Settlement Class Members that the settlement will be binding upon all Settlement Class Members that do not request exclusion.  Fed. R. Civ. P. 23(c)(2)(B)(vii).

In addition to providing the information mandated by Fed. R. Civ. P. 23(c)(2), the Individually Mailed Notice also complies with the recommended requirements of the Manual For Complex Litigation for a combined settlement-certification class notice disseminated under authority of the court.  *See* 3 Newberg, § 8.21, 8.39; MFCL, §§ 21.132, 21.312, 21.633.  The Notice describes the terms and conditions of the settlement, the background of the litigation, the claims asserted, the nature of the release, the identity of class counsel, the rights and responsibilities of class members, and the nature of the mandatory certification of the settlement classes.  It informs class members of the attorneys' fees requested and preliminarily approved.  It likewise details the final settlement approval procedure and includes the date, time and place of the final approval hearing.  It provides a procedure for class members to comment in support of or in opposition to the settlement agreement or to opt out of the settlement.  It also notifies class members of their opportunity to be heard at the final hearing.

The Notice fulfills the requirement of neutrality in class notices, 3 Newberg, § 8.39, and it attempts to summarize the proceedings to date and the terms and conditions of settlement in an informative and coherent manner.  MFCL, § 21.312.  It makes it clear that the settlement does not constitute an admission of liability by Meeker County and emphasizes that the Court has not yet ruled, one way or another, on the substantive merits of the action.  It also states that the final settlement approval decision has yet to be made.  Accordingly, the Notice complies with the standards of fairness, completeness and neutrality required of a combined settlement-certification

class notice disseminated under authority of the court. 3 Newberg, § 8.21, 8.39; MFCL, §§ 21.132, 21.312, 21.633.

## VI.   TERMS AND CONDITIONS OF THE SETTLEMENT.

### A.   <u>Amounts To Be Paid.</u>

The Settlement Agreement is self-explanatory. As a compromise settlement of this class action lawsuit, and in exchange for the releases and covenants described in the Settlement Agreement, Defendants agree to pay a total of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000), which will be paid as follows:

1. Fifty Thousand Dollars ($50,000.00) to Named Plaintiff Gail Lynn Simpson;

2. One Million Seventy Thousand Dollars ($1,070,000) to be divided, as described below in Section B, among all Class Members who come forward and make a claim for compensation; and

3. Six Hundred Thirty Thousand Dollars ($630,000) to Class Counsel as combined fees <u>and</u> costs. From this amount Class Counsel will pay all of the plaintiff's and class' costs, including the costs incurred in preparing and sending Notice of this settlement to all potential Class Members, the costs incurred in preparing, sending, and processing Claim Forms, the costs incurred in providing staff to answer inquiries from Class Members and interested parties, and the costs of disbursing the settlement proceeds to all persons making a claim. The lump sum set aside for attorneys' fees and costs is the total amount that will be paid by Defendants for all attorneys' fees and costs in connection with

the Subject Lawsuit and this Settlement, regardless of whether any Class Member or other person engages separate or additional legal counsel or incurs separate or additional attorneys' fees or costs. Class Counsel anticipates that given the fact that Meeker County is unable to determine which potential class members were strip searched, notice and administration of this settlement will be more expensive than usual. This expense is anticipated in the $630,000 figure.

**B.     Methodology Used to Compensate the Classes.**

The Parties propose that after final approval of the settlement by the Court, the following method be used to compensate Class Members:

1.     All potential Settlement Class Members who can be located will be sent by first-class mail, postage prepaid, a Notice and attached Claim Form (*see* Exhibit H), stating the date(s) of booking(s) at the Meeker County Jail for non-felonious arrests which do not involve weapons or drugs and instructing him or her on how to attest whether any of those bookings resulted in an illegal strip search or photography, or opt-out of the Settlement Class.

2.     "Located Class Members" will be Class Members who do not choose to opt-out of the Class and:

a.     were sent Notice of the settlement and the Notice was not returned as undeliverable; or

      b.      were sent Notice of the settlement and the Notice was returned with a forwarding or other presumably good address shown that resulted in a successful, i.e., non-returned, mailing.

      c.      was an unlocateable Settlement Class Member whose Notice was returned without a forwarding or other presumably good address shown that contacted Class Counsel to inform Counsel of his or her whereabouts, provided that the Class Member contacted Class Counsel with sufficient time to allow the Class Member to receive the Claim Form before the deadline for returning the fully-executed Claim Form.

3.      Those "Located Class Members" that return their fully-executed Claim Forms before the deadline for returning Claim Forms, will constitute the "Final Class Members."  Only "Final Class Members" will be eligible for compensation.

4.      Compensation will be made to Final Class Members primarily on the basis of how many Final Class members there are and how many shares in the "primary fund" there are, i.e., on the basis of compensation for the first, or only, illegal strip search they were subjected to and whether they had their public areas, or in the case of females, breasts, photographed.  Final Class Members that were illegally strip searched more than once will also receive an additional compensation "secondary fund" bonus for each additional illegal strip search to which they were subjected.

5.      Final Class Member Compensation will be determined as follows:

a.      Nine Hundred Fifty Thousand Dollars ($950,000) of the One Million Seventy Thousand Dollars ($1,070,000) will be designated as the "primary fund" and will be available for Settlement Class Member compensation.  Each Final Class Member who attests that he or she qualifies as a member of the "Strip Search Settlement Class" will be given one share in the "primary fund."  Each Final Class Member who attests that he or she qualifies as a member of the "Photograph Settlement Class" will be given one share in the "primary fund."  No class member may have more than two shares in the "primary fund," and each share of the "primary fund" will receive no more than Two Thousand Five Hundred Dollars ($2,500) from the "primary fund," which means that no Class Member will receive more than Five Thousand Dollars ($5,000) from the "primary fund." Upon receipt of all timely returned Claim Forms, the total number of shares that Final Class Members have will be calculated.  This figure will be divided into Nine Hundred Fifty Thousand Dollars ($950,000).  The resulting dollar figure, or Two Thousand Five Hundred Dollars ($2,500), whichever is lower, will be the Base Compensation Figure per share.  No Final Class Member will receive less than the Base Compensation Figure.

b.     The remaining One Hundred Twenty Thousand Dollars ($120,000) of the One Million Seventy Thousand Dollars ($1,070,000) will be designated as the "secondary fund" and will be available for Class Member compensation. The "secondary fund" will be used to provide bonus compensation for Final Class Members who were illegally strip searched more than once, provided, however, that each additional search will be compensated in an amount no greater than One Thousand Dollars ($1,000). Upon receipt of all timely returned Claim Forms, the total number of additional strip searches for which Claim Forms are submitted will be calculated. This figure will be divided into One Hundred Twenty Thousand Dollars ($120,000). The resulting dollar figure, or One Thousand Dollars ($1,000), whichever is lower, will be the Bonus Compensation Figure that will be paid for each additional strip search claimed by a Final Class Member. This Bonus Compensation Figure will be paid for each eligible strip search beyond the first eligible strip search for which the Final Class Member is making a claim. It will be paid in addition to the Base Compensation Amount.

**C.     Cap on Class Damages and Return of Monies to Meeker County**.

As described above, no Final Class Member will have more than two shares from the "primary fund," compensation from the "primary fund" will be capped at Two Thousand Five

Hundred Dollars ($2,500) per share, and compensation from the "secondary fund" will be capped at One Thousand Dollars ($1,000) per additional search. Theoretically, this could result in some portion of the One Million Seventy Thousand Dollars ($1,070,000) not being disbursed. Any such portion will be returned to Meeker County. These funds will be returned no later than seven months after checks are mailed to Final Class Members.

> **D.     Settlement Amounts May Be Taxable.**

Because recovery by Class Members may be taxable, Final Class Members who cash their checks will receive a Form 1099. *See* IRS Code; Publication 17, Chapter 12 "Your Federal Income Tax (for Use in Preparing 2008 Returns): Other Income," Department of the Treasury, Internal Revenue Service, page 90. The Notices mailed to class members will inform them that any proceeds they receive may be taxable.

## VII.   TIMELINE AND DEADLINES CONCERNING NOTICE OF THE SETTLEMENT.

The parties recommend that this Court's Order preliminarily approving the settlement set the deadline for Class Members to opt-out of the Class, to return the Claims Form attesting that they were strip searched and/or photographed as described in the class descriptions and are thus a part of one or both of the Classes, and to comment or to object to the settlement, at 60 days from the date of mailing of the Individually Mailed Notices.

The parties further recommend that the Final Fairness Hearing be scheduled no sooner than 10 days from the deadline for comments or objections by Class Members, but within 25 days of that deadline.

## VIII.   PROPOSED  DEADLINES  FOR  RETURN  OF  CLAIM  FORMS  AND DISTRIBUTION OF COMPENSATION.

Although these deadlines can be finally decided at the time of Final Approval of the settlement, the parties, at this time, recommend the following time table for events that will occur after Final Approval of the settlement:

1.     Thirty days after the Court's Order giving Final Approval of the settlement, Defendants will make payment of the One Million Seven Hundred Fifty Thousand Dollars ($1,750,000).  Payment will be made by transfer of this amount to Class Counsel's trust account.

2.     Payment to Final Class Members will be made within 20 days of the receipt by Class Counsel of the payment of the One Million Seven Hundred Fifty Thousand Dollars ($1,750,000).   Class Counsel, or its hired administrator, will make payment directly to the Named Plaintiff and all Final Class Members out of Class Counsel's trust account.  The checks will state on their face an expiration date after which they will become void if not cashed.  The expiration date will be six months after the date they were mailed.

3.     Within 14 days of the disbursement of all proceeds, Class Counsel will provide an accounting to the Court and to counsel for the Defendants showing the names and addresses of all persons receiving compensation and the amount of that compensation, and certifying that all funds have been disbursed.

4.     1099 Forms will be sent in February of the year after the year in which checks are sent.

**IX.    SUMMARY OF REQUESTED PROCEDURE AND TIMELINE**.

For the Court's convenience, an outline of the requested procedure and deadlines is provided below.   As cited throughout this Petition, this requested procedure and timeline comports with the recommendations of the Manual for Complex Litigation 4th (2004), Newberg on Class Actions, and applicable case law.

1.      The Court preliminarily approves the settlement, approves the form of the proposed settlement notice, and schedules a final fairness hearing.

*Assuming the Settlement is given Preliminary Approval:*

2.      The Individually Mailed Notices are mailed to prospective Class Members as described in section VII above.

3.      Class Members are required to opt-out of the Classes, to return the Claims Form attesting that they were strip searched and/or photographed in pubic or breast areas and to comment about or object to the settlement within 60 days after the settlement notices are mailed.

4.      After the 60-day deadline, the Parties jointly petition the Court for Final Approval of the settlement.

5.      The Court holds a Formal Fairness Hearing no sooner than 10 days after the 60-day deadline but no later than 25 days after the 60-day deadline.  Class Members may appear at the hearing in support of or in opposition to the settlement.

*Assuming the Settlement is given Final Approval:*

6.      Thirty days after the Court's Order giving Final Approval, Defendants will make payment of the $1,750,000.

7.      Within 20 days of the payment by Defendants, checks are mailed to Final Class members.  The checks state on their face an expiration date after which they will become void if not cashed.  The expiration date will be six months after the date they were mailed.

8.      Within 14 days of the day that checks are mailed, Class Counsel files with the Court and provides to Defendants an accounting of the names and addresses of all Class Members that received settlement proceeds and the amounts they received.

9.      Six months after the checks are mailed they become void and any unclaimed funds are returned to the Defendants.

10.    In February of the year following the year in which checks were mailed, 1099 (tax) forms are sent to all persons who received and cashed checks.

## X.      UNCLAIMED COMPENSATION.

In the event that any mailed checks are not cashed within six months of the date of mailing, or are returned as undeliverable and the intended recipient cannot be located, the total funds unclaimed will be returned to the Defendants.

## XI.    CONCLUSION.

On the basis of the foregoing, the parties request that this Court grant preliminary approval of the Settlement Classes and the Settlement Agreement, approve the form of the proposed settlement notice, adopt the deadlines set forth herein or similar deadlines, and schedule a final fairness hearing.

80521205.1

**JOINTLY SUBMITTED BY PLAINTIFF AND DEFENDANTS.**

Dated this 26th day of May, 2009.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By:   /s/ Vincent J. Moccio
      Vincent J. Moccio (#184640)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFF

IVERSON REUVERS, LLC

By:   /s/ Susan M. Tindal
      Jon K. Iverson (#146389)
      Susan M. Tindal (#330875)

9321 Ensign Avenue South
Bloomington, MN 55438
(952) 548-7200

ATTORNEYS FOR DEFENDANTS

80521205.1